**William O. MEEKS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 39A05–0106–CR–262.**

Court of Appeals of Indiana.

Dec. 13, 2001.

Leanna Weissman, Lawrenceburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Martha Warren–Rosenfeld, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Today we are called upon ostensibly to review the trial court's denial of a jury instruction regarding the jury's power of nullification. However, in arguing that the trial court should have given his tendered instruction, appellant-defendant William O. Meeks invites this court to overrule supreme court precedent on the issue of jury nullification, which he asserts is inconsistent with the language and intent of Article I, Section 19 of the Indiana Constitution. Thus, an essential aspect of this case is the role of the Court of Appeals as an intermediate appellate court and the extent to which it is bound by the precedent established by our supreme court.

### FACTS [1]

The facts most favorable to the verdict are that on April 5, 2000, Madison City Police Officer Kenneth L. Jones was notified by police dispatch that it had received an anonymous tip that Meeks, a habitual traffic offender, was driving to the Quality Farm and Fleet store. Officer Jones located Meeks's vehicle at that store and arrested Meeks after he drove his vehicle out of the store's parking lot.

On April 6, 2000, Meeks was charged with operating a vehicle after suspension of driving privileges for life,[2] a class C felony. During the trial on May 1, 2001, the State established that in 1993 Meeks was convicted for being a habitual traffic violator and was suspended from driving for life. Officer Jones testified that he stopped Meeks on the basis of the tip that he was driving on a suspended driving license, and that Meeks was not speeding, operating while intoxicated, or operating his vehicle recklessly at the time of his arrest.

Meeks did not dispute that his license had been suspended or that he was driving unlawfully. Rather, he testified that he drove to the feed supply store to purchase food and bedding for his hatchling geese, ducks, and chickens, and that the young birds might have perished without these supplies. Meeks argued that, given the facts of his case, the jury should be instructed that it "could refuse to enforce the law's harshness when justice so requires." Appellant's brief at 4. Specifically, Meeks tendered the following jury instruction regarding nullification:

Since this is a criminal case, the Constitution of the State of Indiana makes you the judges of both the law and facts. Though this means that you are to determine the law for yourself, it does not mean that you have the right to make, amend, alter, disregard, abolish or ignore the law. The instructions of this court are the best source as to the law applicable in this case.

Our state constitution also intentionally allows you latitude to refuse to enforce

---

1. We heard oral argument on this cause on November 28, 2001 at South Dearborn High School, near Wilmington, Indiana. We wish to thank the high school for its hospitality and commend both parties for their excellent presentations. We also wish to thank Judge James D. Humphrey of the Dearborn Circuit Court Judge and Judge G. Michael Witte of the Dearborn Superior Court for arranging our visit with the members of the Dearborn County Bar and the high school. This oral argument represents a culmination of a series of oral arguments held throughout the state to bring our court closer to the people we serve. These oral arguments were held as part of our centennial celebration of the establishment of our state's intermediate court.

2. IND.CODE § 9–30–10–17. The State originally charged Meeks with operating a vehicle after suspension as a habitual traffic offender, a class D felony, but subsequently amended its charging information. Appellant's App. at 5–6.

the law's harshness when justice so requires. This should not be taken lightly nor exercised whimsically, but only exercised upon a sincere and solemn belief that justice of this case requires its application. Appellant's App. at 74. The trial court instructed the jury on the first paragraph, but not the second paragraph, of Meeks's tendered jury instruction. Subsequently, the jury found Meeks guilty as charged. In determining Meeks's sentence, the trial court considered the mitigating factors that he had led a law-abiding life for almost eight years, that his purpose for violating the law was benign, that Meeks was a kind and generous person who meant no harm by his actions, and that his actions had neither caused nor threatened harm. Appellant's App. at 109. The trial court then sentenced Meeks to the minimum sentence of two years imprisonment.[3] Meeks now appeals.

## DISCUSSION AND DECISION

Meeks contends that the trial court erred in refusing to give his tendered jury instruction regarding the jury's power of nullification. Specifically, Meeks claims that current precedent, which indicates that the jury does not have the power of nullification, is inconsistent with the language and intent of Article I, Section 19 of the Indiana Constitution. Meeks asserts that this constitutional provision should be interpreted to allow the jury to refuse to enforce the law's harshness when justice so requires, as suggested by Justice Rucker in his law review article, *The Right To Ignore the Law: Constitutional Entitlement Versus Judicial Interpretation*, 33 Val. U.L.Rev. 449, 481 (1999). Thus, Meeks invites this court to overrule the precedent set by our supreme court and hold that his proposed instruction was a correct statement of the law and should have been read to the jury.

 In addressing Meeks's request, we note that we are bound by the decisions of our supreme court. *See In re Petition to Transfer Appeals*, 202 Ind. 365, 376, 174 N.E. 812, 817 (1931). The precedent our supreme court establishes is binding upon us until it is changed either by that court or by legislative enactment. *Id.* Nevertheless, while we are without authority to overrule the decisions of our supreme court, we are authorized by rule to criticize the supreme court's ruling. Specifically, the Indiana Constitution provides that this court shall exercise appellate jurisdiction under such terms and conditions as the supreme court shall specify by rules. *See* Ind. Const. art. 7, § 6. Our authority to criticize supreme court precedent is, thus, found in Ind.Appellate Rule 65(A). This rule establishes the criteria for the publication of judicial opinions, and states that a Court of Appeals opinion shall be published, among other reasons, if the case "criticizes existing law." While we are permitted to criticize supreme court precedent, we exercise that privilege rarely, and solely for the purpose of urging reconsideration of the particular issue.

 Before determining whether to exercise our prerogative to criticize supreme court precedent on jury nullification, we note that the manner of instructing the jury lies within the sound discretion of the trial court. *State v. Snyder*, 732 N.E.2d 1240, 1244 (Ind.Ct. App.2000). In determining whether the trial court erroneously refused a ten-

---

**3.** The presumptive sentence for a class C felony is four years. IND.CODE § 35–50–2–6. The trial court did not have the option of suspending Meeks's minimum sentence because he had a prior felony conviction within seven years of the date of this offense. *See* I.C. § 35–50–2–2(b).

dered instruction, we consider: 1) whether the tendered instruction correctly states the law; 2) whether there is evidence in the record to support giving the instruction; and 3) whether the substance of the instruction is covered by other instructions. *Id.* at 1244–45. The central issue in this case is whether Meeks's tendered instruction was a correct statement of the law.

The source of the jury's right to determine the law in criminal cases is Article I, Section 19 of the Indiana Constitution, which provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." This constitutional mandate is codified in IND. CODE § 35-37-2-2(5), which governs the trial court's instructions to the jury, and provides, in relevant part: "The Judge shall inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law."

Current precedent establishes that the instruction given by the trial court was a correct statement of the law and that the refused portion of Meeks's instruction would have erroneously informed the jury that it has a power of nullification that it does not have. Specifically, the current state of the law regarding the proper interpretation of Article I, Section 19 originated in *Beavers v. State*, 236 Ind. 549, 141 N.E.2d 118 (1957).[4] In that case, our supreme court determined that "the [jury's] right to determine the law," as established in Article I, Section 19, "is not the right to make, repeal, disregard, or ignore the law in all its phases." *Id.* at 562, 141 N.E.2d at 124. In so holding, the court dispelled the notion that Article I, Section 19 autho-

rized the jury to disregard trial court instructions. *Id.* at 564, 141 N.E.2d at 125.

Thirty years later, in *Fleenor v. State*, 514 N.E.2d 80, 87 (Ind.1987), the defendant challenged an instruction based upon *Beavers* that was substantially similar to the one given by the trial court in the case at bar. That instruction stated that the jury's constitutional right to judge both the law and facts does not include the "right to make, repeal, disregard, or ignore the law as it exists." *Id.* Our supreme court rejected the defendant's contention that this instruction was contrary to the plain language of the Indiana Constitution and held that it was a correct statement of the law. Thus, it is well established that the portion of Meeks's instruction actually given by the trial court properly states the law.

Moreover, our supreme court has rejected an instruction similar to the second portion of Meek's proposed instruction— that the jury has the right to mitigate its verdict if it feels that the mandatory punishment is harsh considering the circumstances of the case. Specifically, in *Walker v. State*, 445 N.E.2d 571, 574 (Ind.1983), the defendant proposed the following instruction:

> If, after considering all of the evidence presented in this case, you find that the mandatory punishment inflicted on the Defendant under the Habitual Offender Statute is excessive under the standards read to you, then you may take that finding into consideration in rendering your verdict.

*Id.* at 574. According to our supreme court, "the refused instruction[ ] would have conveyed to the jury the belief that it

---

**4.** Prior to *Beavers*, our supreme court had interpreted Article I, Section 19, to confer upon the jury the power and the right to determine the law, and, thus, the jury was not

bound by the instructions given to it by the trial court. *See Williams v. State*, 10 Ind. 503 (1858); *Daily v. State*, 10 Ind. 536 (1858).

had a power of nullification, which clearly it does not possess under the law." *Id.* at 575. The court then went on to approve an instruction almost identical to the one given by the trial court in this case.[5] *Id.*

Notwithstanding current precedent, Meeks asserts that Article I, Section 19 of the Indiana Constitution should be interpreted to allow the jury to be merciful by refusing to enforce the law's harshness when justice so requires. According to Meeks, "a proper interpretation of our constitution allows the jury the right to nullification and ... any cases which attempt to limit that right have done so in error." Appellant's reply brief at 2.

In support of his argument, Meeks relies upon a law review article written by Justice Rucker of the Indiana Supreme Court,[6] where Justice Rucker advocates:

> [A]n instruction telling the jury that the constitution intentionally allows them latitude to 'refuse to enforce the law's harshness when justice so requires' would be consistent with the intent of the framers and give life to what is now a dead letter provision.

Rucker, *supra,* at 481. In his article, Justice Rucker examines the historical circumstances that gave rise to the concept of jury nullification articulated in Article I, Section 19. He traces the common law principle of jury nullification to its English roots in *Bushell's Case,* 124 Eng. Rep. 1006 (C.P.1670)—the post-medieval trial of William Penn and William Meade.[7] *Id.* at 449. The jury in *Bushell's Case* refused to convict Penn and Meade for unlawful assembly after they delivered speeches at a Quaker meeting in London, England.[8] *Id.* at 449–50. Even after the court ordered that the jury be deprived of food, water, and heat until it returned a guilty verdict, the jury held out and refused to return the verdict requested by the court. *Id.* at 450–51. As a result, the court fined and imprisoned the jurors until, on a writ of habeas corpus, the justices abolished the practice of punishing juries for their verdicts. *Id.* at 451.

The principle of *Bushell's Case*—the jury's right to protect citizens from oppressive government—was observed in colonial and post-revolution America.[9] *Id.* at 452. According to Justice Rucker, in drafting Article I, Section 19 of our State constitution, the framers intended to preserve this right of ordinary citizens to check and control the power of the government. *Id.* at 477. Justice Rucker states:

> Certainly the jury's right to determine the law meant something to the framers.

**5.** Specifically, the *Walker* instruction admonishes the jury that it does not "have the right to make, repeal, disregard, or ignore the law as it exists," 445 N.E.2d at 574, whereas the instruction here states that the jury does not "have the right to make, amend, alter, disregard, abolish or ignore the law."

**6.** At the time that Justice Rucker wrote this article he was a judge of the Indiana Court of Appeals.

**7.** Bushell was the name of "the foreman of the Penn and Meade jury." Rucker, *supra,* at 449, n. 2 (citing 124 Eng. Rep. 1006 (C.P. 1670)).

**8.** Specifically, Penn and Meade were charged with violation of "the Conventicle Act of 1670, which prohibited the public expression of religious beliefs ... not in accord with [those of] the Church of England." Rucker, *supra,* at 450. Penn and Meade argued that the law under which they were indicted was invalid. *Id.*

**9.** Originally, many states "conferred upon juries in general terms the power to determine the law and the facts in criminal cases by statute or constitution." *Beavers v. State,* 236 Ind. 549, 551, 141 N.E.2d 118, 121 (1957). However, Indiana remains as one of only two states, the other being Maryland, that has retained the right of jury nullification in its constitution. *Id.*

If it did not mean that the jury could alter, abolish, or amend the law, and if it did not mean that the jury could set aside the law on the basis of having a differing opinion of what the law was, then what did it mean? Considering the apparent purpose for which the provision was adopted, as informed by the history of Indiana's constitutional scheme, one may reasonably conclude that it means the jury has a right not to apply the law when their conscience so dictates.

*Id..* Meeks contends that Justice Rucker's interpretation of Article I, Section 19 is proper, and that disallowing the jury "to alleviate the harshness of the law if justice so dictates is contrary to the language and intent of the framers of our constitution." Appellant's brief at 8.

■ It is apparent from the proliferation of case law on the subject of jury nullification, that our supreme court has engaged in an extensive and in-depth analysis of this issue. The court has carefully scrutinized the text, intent, and historical underpinnings of Article I, Section 19, and, since it decided *Fleenor* in 1987, has adhered to the principle that the constitutional right of the jury to determine the law in criminal cases does not include the right to disregard or ignore the law as it exists. *See Canaan v. State,* 541 N.E.2d 894, 910 (Ind.1989); *Bivins v. State,* 642 N.E.2d 928, 946 (Ind.1994). While this court is permitted to criticize supreme court precedent, we are constrained not to offer such criticism where, as here, there has been recent and repeated articulation of the same principle. Accordingly, we decline Meeks's invitation to criticize our supreme court's ruling on jury nullification and hold that the trial court properly instructed the jury regarding its rights and obligations under the Indiana Constitution. Thus, we conclude that the trial court did not err in refusing to give Meeks's tendered instruction on jury nullification.

Affirmed.

NAJAM, J., and BAILEY, J., concur.